**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TEXAS**
**MARSHALL DIVISION**

| | |
|---|---|
| PERSONALIZED MEDIA COMMUNICATIONS, LLC, | |
| Plaintiff, | **Civil Action No. 2:19-cv-00091-JRG** |
| v. | |
| NETFLIX, INC., | |
| Defendant. | |

**NETFLIX'S MOTION TO DISMISS**
**OR, IN THE ALTERNATIVE, TRANSFER FOR IMPROPER VENUE**

# TABLE OF CONTENTS

**Page**

I.      Introduction ................................................................................................... 1

II.     Key Facts ....................................................................................................... 1

III.    Legal Authority ............................................................................................. 3

    A.      Motion to Dismiss or Transfer For Improper Venue ............................. 3

    B.      Motion to Transfer for Inconvenient Venue .......................................... 4

IV.     Argument ....................................................................................................... 5

    A.      The Court Should Dismiss or Transfer This Case for Improper Venue ............... 5

        a.      Netflix Does Not "Reside" in the Eastern District of Texas ..................... 5

        b.      Netflix Has Not Committed an Act of Infringement in This District ........ 6

        c.      Netflix Has No "Regular and Established Place of Business" in This District ................................................................................... 6

            i.      The Open Connect Servers Are Not Netflix's "Places of Business ..................................................................... 6

        d.      The Servers Are Not "Regular and Established" Places of Business of Netflix ................................................................................ 9

        e.      Equipment Should Not Constitute a "Place" Under the Venue Statute ...................................................................................... 10

        f.      If Not Dismissed, This Action Should Be Transferred to Northern California ............................................................................. 12

    B.      The Court Should Transfer for Inconvenient Venue ........................................ 12

        a.       This Case Could Have Been Brought in Northern California ................ 12

        b.      The Private Interest Factors Favor Transfer .......................................... 12

            i.      Northern California Offers Better Access to Proof ..................... 12

            ii.     Northern California Is More Convenient for Potential Witnesses ................................................................ 13

            iii.    Northern California Has More Relevant Absolute Subpoena Power ................................................................ 14

            iv.     Judicial Economy Is Neutral .......................................... 14

        c.      The Public Interest Factors Favor Transfer ........................................... 15

            i.      The Northern District of California Has a Greater Interest in This Case ................................................................ 15

            ii.     The Remaining Public Interest Factors Are Neutral .................... 16

V.      Conclusion .................................................................................................... 16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Adaptix, Inc. v. HTC Corp.*,
  937 F. Supp. 2d 867 (E.D. Tex. 2013) .................................................................5, 12

*Aten Int'l Co. v. Emine Tech. Co.*,
  261 F.R.D. 112 (E.D. Tex. 2009) ..............................................................................5

*In re BigCommerce, Inc.*,
  890 F.3d 978 (Fed. Cir. 2018) ....................................................................................8

*BMC Software, Inc. v. Cherwell Software, LLC*,
  No. 1:17-cv-1074 (E.D. Va. Dec. 21, 2017), Dkt. No. 55 ........................................4

*Centre One v. Vonage Holdings Corp.*,
  No. 6:08CV467, 2010 WL 3257642 (E.D. Tex. Aug. 17, 2010) ............................12

*In re Cordis Corp.*,
  769 F.2d 733 (Fed. Cir. 1985) ..................................................................................11

*In re Cray Inc.*,
  871 F.3d 1355 (Fed. Cir. 2017) ........................................................................ *passim*

*CUPP Cybersecurity, LLC v. Symantec Corp.*,
  C.A. No. 3:18-CV-01554, 2019 WL 1070869 (N.D. Tex. Jan. 16, 2019) ................4

*Dep't of Homeland Sec. v. MacLean*,
  135 S. Ct. 913 (2015) ...............................................................................................11

*Fourco Glass Co. v. Transmirra Prods. Corp.*,
  353 U.S. 222 (1957) ....................................................................................................4

*In re Genentech, Inc.*,
  566 F.3d 1338 (Fed. Cir. 2009) ...........................................................................5, 14

*GeoTag, Inc. v. Starbucks Corp.*,
  No. 2:10-cv-572, 2013 WL 890484 (E.D. Tex. Jan. 14, 2013) ...............................15

*In re Google LLC*,
  No. 2018-152, 2018 WL 5536478 (Fed. Cir. Oct. 29, 2018) ....................................4

*Herman v. Cataphora, Inc.*,
  730 F.3d 460 (5th Cir. 2013) ....................................................................................12

*In re Hoffman-La Roche Inc.*,
  587 F.3d 1333 (Fed. Cir. 2009) ...............................................................................15

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Innovative Global Sys. LLC v. OnStar, LLC*,
   No. 6:10-CV-574-LED-JDL, 2012 WL 12930885 (E.D. Tex. Feb. 14, 2012)........................14

*Klausner Techs., Inc. v. Interactive Intelligence Grp., Inc.*,
   No. 6:11-cv-578-LED, 2012 WL 13012618 (E.D. Tex. Sept. 26, 2012) ...............................14

*Moran v. Smith*,
   No. 5:15-cv-1121-DAE, 2016 WL 4033268 (W.D. Tex. July 27, 2016) ...............................12

*In re Nintendo Co.*,
   589 F.3d 1194 (Fed. Cir. 2009)........................................................................................5, 13

*Optimum Power Solutions LLC v. Apple, Inc.*,
   794 F. Supp. 2d 696 (E.D. Tex. 2011)...................................................................................16

*PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*,
   No. 6:11–CV–655, 2013 WL 9600333 (E.D. Tex. Mar. 21, 2013)........................................13

*Personalweb Techs., LLC v. Yahoo! Inc.*,
   No. 6:12–CV–658, 2014 WL 1689046 (E.D. Tex. Feb. 12, 2014).........................................15

*Power Paragon, Inc. v. Precision Tech. USA, Inc.*,
   605 F. Supp. 2d 722 (E.D. Va. 2008) ....................................................................................11

*Realtime Data LLC v. Teradata Operations, Inc.*,
   No. 6:15-CV-470-RWS-JDL, 2016 WL 235183 (E.D. Tex. Jan. 20, 2016) ..........................12

*Rimkus Consulting Grp., Inc. v. Balentine*,
   693 F. Supp. 2d 681 (S.D. Tex. 2010) ...................................................................................11

*Schnell v. Peter Eckrich & Sons, Inc.*,
   365 U.S. 260 (1961)..................................................................................................................8

*SEVEN Networks, LLC v. Google LLC*,
   315 F. Supp. 3d 933 (E.D. Tex. 2018)............................................................................ *passim*

*TC Heartland LLC v. Kraft Foods Grp. Brands LLC*,
   137 S.Ct. 1514 (2017)............................................................................................................3, 4

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008)..................................................................................................5

*U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*,
   No. 6:12-CV-398 MHS-JDL, 2013 WL 1363613 (E.D. Tex. Apr. 2, 2013)..........................14

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*In re Verizon Bus. Network Servs., Inc.*,
   635 F.3d 559 (Fed. Cir. 2011)..................................................................................................14

*In re Volkswagen of Am., Inc.*,
   545 F.3d 304 (5th Cir. 2008) .............................................................................................5, 13

*In re ZTE (USA) Inc.*,
   890 F.3d 1008 (Fed. Cir. 2018)..............................................................................................4

**Statutes**

28 U.S.C. § 1391(b)(2) .........................................................................................................10, 11

28 U.S.C. § 1400(b) ............................................................................................... *passim*

28 U.S.C. § 1404(a) ............................................................................................... *passim*

28 U.S.C. § 1406(a) ................................................................................................................12

## I.      Introduction

This case does not belong in this district.  Netflix, Inc. ("Netflix") is a Delaware corporation with a principal place of business in Los Gatos, California.  Netflix has no offices or data centers in this district.  Netflix owns no property, leases no property, and employs no people in this district.

For this reason, Plaintiff Personalized Media Communications, LLC ("PMC") rests its venue allegations entirely on certain *computer equipment* located in this district.  PMC draws support from this Court's finding in *SEVEN Networks* that, where servers operating in this district were both owned and physically controlled by a defendant, they could qualify as the defendant's "place of business" under § 1400(b).[1]  However, the servers used to serve Netflix content are *neither* owned *nor* physically controlled by Netflix.  To the contrary, Netflix ▉▉▉▉▉▉▉▉▉▉ ▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉▉ the internet service providers ("ISPs") who use them. Netflix does not own, lease, or possess the property where those servers are located, the shelves they sit on, or the servers themselves.  As a result, under the approach this Court took in *SEVEN Networks*, the Open Connect Appliances that form the exclusive basis for PMC's venue allegations do not qualify as a place of business of Netflix.  To hold otherwise would vitiate the line between physical and logical control that this Court articulated in *SEVEN Networks*, directly conflict with the Federal Circuit's holding in *In re Cray*,[2] and vastly expand the scope of § 1400(b).  The Court should, therefore, dismiss this case for improper venue or, in the alternative, transfer it to the Northern District of California.

## II.     Key Facts

Netflix is incorporated in Delaware and has its principal place of business in Northern California.  Dkt. No. 1 at ¶ 2.  Netflix neither owns nor leases real estate in this district, has no employees who reside in this district, and does not hold itself out as having offices in this district. Declaration of Quynh Nguyen ("Nguyen Decl.") ¶ 3.

For this reason, Netflix's content distribution network, which Netflix calls "Open

---

[1] *SEVEN Networks, LLC v. Google LLC*, 315 F. Supp. 3d 933, 966-67 (E.D. Tex. 2018).
[2] 871 F.3d 1355 (Fed. Cir. 2017).

**NETFLIX'S MOTION TO DISMISS OR TRANSFER FOR IMPROPER VENUE** – Page 1

Connect," is the sole basis for PMC's assertion that Netflix has a "regular and established place of business" in this district.  Dkt. No. 1 ¶ 12.  By way of background, a content delivery network (or "CDN") is a network of servers that store digital content for further distribution.[3]  CDNs are helpful because the network connections that make up the internet have limited bandwidth and, in some cases, are expensive to use.  Thus, for companies who distribute digital content, it is often more efficient, and provides a better user experience, to cache data or content in a set of distributed servers (closer to where that content will be consumed) than to store it in one or a few centralized repositories.

Historically, Netflix used third-party CDNs to deliver all of its content to end users.  However, starting in 2011, Netflix began to work on the development of Open Connect.  *See* Dkt. No. 1 at n.4 (https://media.netflix.com/en/company-blog/how-netflix-works-with-isps-around-the-globe-to-deliver-a-great-viewing-experience). Open Connect has three major pieces.

First, Netflix uses Amazon's Web Services ("AWS") to prepare content for a user, and to provide the elements of the Netflix service up until the moment the user presses "play."  *Id.*  This distribution uses AWS in a way that is "generic" and "not unique to Netflix."[4]  *Id.*

Second, Netflix has data centers (called "Internet Exchange Points" or IXs), which it owns or leases and which contain equipment owned by Netflix for the purpose of caching content for delivery.  *Id.*  However, none of those data centers are located in this district.  Nguyen Decl. ¶ 3.

Third, Netflix *gives* hardware to third-party ISPs who may install and use it (and the software it contains) to speed up the delivery of Netflix content to their subscribers.  *See* Dkt. No. 1 at n.4 (https://media.netflix.com/en/company-blog/how-netflix-works-with-isps-around-the-globe-to-deliver-a-great-viewing-experience).  Under the transfer agreements, ██████████████

████████████████████████████████████████████████  *See* Nguyen Decl. Ex. 1.

---

[3] *See generally* https://en.wikipedia.org/wiki/Content_delivery_network

[4] PMC does not appear to be alleging that this portion of Netflix's distribution gives rise to venue.  Nor could it.  *See SEVEN Networks*, 315 F. Supp. 3d at 951 n.27 ("an online business which utilizes Amazon's cloud web hosting solution on the terms offered by Amazon and without any physical equipment of its own present within the data center would, undoubtedly, not be subject to proper venue under § 1400(b) in that district.") (emphasis in original).

Indeed, the transfer agreements state that Netflix ██████████████████████

████████████████████████████████████████████████████

*Id.* at Ex. 1 ¶ 1; *see also id.* Exs. 3, 5, 7, 9 ¶ 1.[5] ███████████████████

████████████████████████████████████████████████████

████████████████████████████████████████████████████

█████████████████████████████████████████   *See generally*

*id.* Netflix also does not have any signs on any of the ISP's buildings nor does it list those ISP

addresses as being Netflix locations. *Id.* ¶ 16.[6]

And although the ISP must ████████████████████████, after expiration

of the term specified in the software license, the ISP maintains the right to ████████████

with the ████████ transferred hardware. *Id.* Exs. 1-10.

All of the servers that Netflix has transferred to ISPs in this district were transferred under

the same basic terms, including ██████████████████████████. *Id.* ¶ 14;

*see id.* Exs. 1-10 (specifying the same basic terms). This specifically includes the servers

transferred to Suddenlink, (including the server named "ipv4-c005-shv004-suddenlink-

isp.1.oca.nflxvideo.net") discussed in Paragraph 10 of PMC's complaint. *Id.* Ex. 1. As a result,

Netflix neither owns nor physically controls *any* servers located in this district.

Additional facts relevant to § 1404(a) are discussed below in the context of that motion.

## III.   Legal Authority

### A.  Motion to Dismiss or Transfer For Improper Venue

Under *TC Heartland*, § 1400(b) "'is the sole and exclusive provision controlling venue in

patent infringement actions.'" *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S.Ct.

---

[5] The Court should note that Netflix's transfer agreements have been structured this way since at least 2012, prior to the decision in *TC Heartland LLC v. Kraft Foods Grp. Brands LLC*, 137 S. Ct. 1514 (2017). Indeed, all of the hardware transfer agreements between Netflix and the ISPs in this district predate the 2017 decision in *TC Heartland*. *See* Nguyen Decl. Exs. 1, 3, 5, 7 and 9.

[6] The map included in Paragraph 9 of PMC's complaint identifies those locations as being "ISP locations," not Netflix locations. *See* https://media.netflix.com/en/company-blog/how-netflix-works-with-isps-around-the-globe-to-deliver-a-great-viewing-experience (explaining that they are "the residential Internet Service Providers (ISPs) our members use to access the internet.")

1514, 1519 (2017) (*quoting Fourco Glass Co. v. Transmirra Prods. Corp.*, 353 U.S. 222, 229 (1957)).  Under § 1400(b), venue is proper only: (i) where the defendant "resides" (meaning its state of incorporation) and (ii) where the defendant has a "regular and established place of business" and acts of infringement occurred.  *Id.*  "[T]he Plaintiff bears the burden of establishing proper venue."  *In re ZTE (USA) Inc.,* 890 F.3d 1008, 1013 (Fed. Cir. 2018).

In *In re Cray*, the Federal Circuit held that the place of business prong "cannot be read to refer merely to a virtual space or to electronic communications from one person to another."  871 F.3d at 1362.  Rather, there must be a "physical, geographical location in the district from which the business of the defendant is carried out."  *Id.*  In *SEVEN Networks*, this Court found that, in light of *In re Cray*, "it would run counter to the statutory requirements to find proper venue in a district where there was *no* physical presence of a given defendant."  315 F. Supp. 3d at 951 (emphasis in original).  However, the Court found that venue existed under the facts of that case because "Google exercises exclusive control over the *physical server and the physical space within which the server is located and maintained.*"  *Id.* (emphasis in original).  The Court stressed the importance of that *physical* control by contrasting it with Google's control over "the digital aspects of" the relevant servers which, the Court found, "may well constitute 'merely' a 'virtual space' without more and, thus, not meet the statutory requirements."  *Id.* at 951 n.27.  Under this holding, venue is improper in this case, because Netflix does not own or physically control the servers on which PMC has based its venue allegations.[7]

_____

[7] Netflix also respectfully notes that since the Federal Circuit concluded in *In re Google LLC*, No. 2018-152, 2018 WL 5536478, at *3 (Fed. Cir. Oct. 29, 2018), that it was "appropriate" to allow the question of venue based on servers in a district to further "percolate in the district courts," several courts have concluded that even *ownership* and *physical control* of servers do not give rise to venue.  *See, e.g.*, *CUPP Cybersecurity, LLC v. Symantec Corp.*, C.A. No. 3:18-CV-01554, 2019 WL 1070869, at *2-3 (N.D. Tex. Jan. 16, 2019); *accord* Memorandum Opinion and Order at 3-4, *BMC Software, Inc. v. Cherwell Software, LLC*, No. 1:17-cv-1074 (E.D. Va. Dec. 21, 2017), Dkt. No. 55.  Netflix respectfully submits that *CUPP* and *BMC* were correctly decided and that equipment should not be construed to constitute a "place" within the language of the statute.  However, as discussed further below, the Court should not need to resolve the conflict between those cases and *SEVEN Networks*, because venue is improper as to Netflix under both approaches.

**B.  Motion to Transfer for Inconvenient Venue**

Under 28 U.S.C. § 1404(a), "[f]or the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought . . . ."  A threshold issue is whether the present action "might have been brought" in the proposed transferee district.  *Adaptix, Inc. v. HTC Corp.*, 937 F. Supp. 2d 867, 871 (E.D. Tex. 2013).  Once the movant makes that showing, "a motion to transfer venue should be granted upon a showing that the transferee venue 'is clearly more convenient' than the venue chosen by the plaintiff."  *In re Genentech, Inc.*, 566 F.3d 1338, 1342 (Fed. Cir. 2009) (quoting *In re Volkswagen of Am., Inc.*, 545 F.3d 304, 315 (5th Cir. 2008) (en banc)).  The district court has discretion to transfer based on its analysis of public and private factors weighing for or against transfer.  *See ATEN Int'l Co. v. Emine Tech. Co.*, 261 F.R.D. 112, 123 (E.D. Tex. 2009) (enumerating the public and private factors).

While the plaintiff's choice of venue receives some deference, "Fifth Circuit precedent clearly forbids treating the plaintiff's choice of venue as a distinct factor in the § 1404(a) analysis." *In re TS Tech USA Corp.*, 551 F.3d 1315, 1320 (Fed. Cir. 2008) (quoting *Volkswagen*, 545 F.3d at 315 n.10).  The Federal Circuit has held that "in a case featuring most witnesses and evidence closer to the transferee venue with few or no convenience factors favoring the venue chosen by the plaintiff, the trial court should grant a motion to transfer."  *In re Nintendo Co.*, 589 F.3d 1194, 1198 (Fed. Cir. 2009).

**IV.  Argument**

**A.  The Court Should Dismiss or Transfer This Case for Improper Venue**

**a.  Netflix Does Not "Reside" in the Eastern District of Texas**

Netflix is incorporated in Delaware,[8] and therefore does not "reside" in this district within the meaning of the first prong of § 1400(b).  *See SEVEN Networks*, 315 F. Supp. 3d at 941 ("It is undisputed that when this action was filed, Google was incorporated in Delaware and therefore

---

[8] PMC has admitted this fact.  *See* Dkt. No. 1 ¶ 2 ("Netflix is a Delaware corporation with its principal office at 100 Winchester Circle, Los Gatos, CA 95032.")

'resided' in Delaware, not in Texas.").

### b.  Netflix Has Not Committed an Act of Infringement in This District

For purposes of this motion, Netflix is not asking the Court to find improper venue based on the "acts of infringement" requirement.   However, Netflix does not concede that it has committed any acts of infringement in this district, that any such act has been properly alleged, or that any alleged acts have a nexus with an alleged place of business of Netflix.

### c.  Netflix Has No "Regular and Established Place of Business" in This District

### i.  The Open Connect Servers Are Not Netflix's "Places of Business"

PMC's venue allegations are based entirely upon the notion that Netflix's "Open Connect" satisfies the "regular and established place of business" requirement.  Dkt. No. 1 ¶¶ 6-12.  Not so.

As an initial matter, the only "Open Connect" servers that reside within this district are the ones that Netflix has transferred to ISPs in this district.  Nguyen Decl. ¶ 14.  As discussed above, however, 

*Id*. Ex. 7 ¶ 1; *see also id.* Exs. 1, 3, 5, 9 ¶ 1

Among other things, this means that, unlike the GGC servers at issue in *SEVEN Networks*, Netflix does not exercise "exclusive control over the *physical server and the physical space within which the server is located and maintained*."   *SEVEN Networks*, 315 F.Supp. 3d at 951 (emphasis in original).  To the contrary,

*See generally* Nguyen Decl. Exs. 1, 3, 5, 7, 9.  A comparison between the facts the Court found significant in *SEVEN Networks* and the facts at issue here demonstrates the contrast.[9]

---

[9] For convenience, Netflix's citations are to its agreement with Suddenlink – which is the same ISP the Court used as exemplary in its analysis in *SEVEN Networks*.

| Google's Control Over GGC Servers | Netflix's Transfer Of "Open Connect" Servers |
|---|---|
| "Google requires ISPs such as Suddenlink to provide '[r]ack space, power, network interfaces, and IP addresses, as specified in the following table [omitted], in consultation with Google'; '[r]emote assistance and installation services described in SCHEDULE 'A''; '[n]etwork access between the Equipment and Host network subscribers'; and '[r]emote high bandwidth access, sufficient for Google to download upgrade images of GGC to the Equipment, unless separate arrangements are agreed with Google." *SEVEN Networks*, 315 F. Supp. 3d at 952. | ██████████████████████████████ ██████████████████████ *See* Nguyen Decl. Exs. 1, 3, 5, 7, 9.  Netflix does not provide ISPs with detailed implementation requirements. *Id.* Ex. 11. |
| "The Suddenlink Agreement makes it clear that the ISP *does not own* the server(s); *Google owns the servers*." *Id.* (emphasis in original). | ██████████████████████████ *Id.* Exs. 1, 3, 5, 7, 9 ¶ 1. |
| The ISP must return the servers to Google if the contract is terminated, or pay Google for their fair market value. *Id.* | █████████████████████████████████ ██████████. *Id.* Exs. 1-10. |
| "Google is not even required to replace faulty servers under the Suddenlink Agreement." *Id.* | ██████████████████████████████ █████ *Id.* Exs. 1, 3, 5, 7, 9 ¶ 3. |
| "Following installation of the GGC server, the ISP is required to provide Google explicit details regarding Google's server's installation location." *Id.* | ████████████████████████████ *Id.* Exs. 1-10 (no such provision).  The Deployment Guide makes it clear that the receiving ISP may change the server's IP address on its own. *Id.* Ex. 11 at 14. |
| "in order for an ISP to move a previously installed GGC from one location to a new location, it must secure Google's permission." *Id.* | ███████████████████████████████. *See id.* Exs. 1, 3, 5, 7, 9 (no such provision).  The Deployment Guide says that the ISP has "full control" over which networks are served by the appliance. *Id.* Ex. 11 at 13. |
| "tasks such as the 'physical switching of a toggle switch;' 'power cycling equipment (turning power on and/or off);' and 'tightening screws, cable ties, or securing cabling to mechanical connections, plug;' may be performed 'only with specific and direct step-by-step instructions from Google.'" *Id.* at 953. | ██████████████████████████████ ██████████████ *Id.* Exs. 1, 3, 5, 7, 9. |

Based on the items on the left-hand side of this chart, the Court found that Google's "control in the physical world exemplifies how the physical presence of the GGC server within this district constitutes more than 'merely' 'a virtual space or [ ] electronic communications from one person to another.'"  *SEVEN Networks*, 315 F. Supp. 3d at 953 (citing *In re Cray*, 871 F.3d at 1362).  The facts on the right-hand side of the chart lead to the opposite conclusion; Netflix has neither ownership of nor physical control over any server within this district.  Thus, even assuming that servers may count as places of business, the Open Connect servers at issue in this motion are not ***Netflix's*** place of business under the approach set forth in *SEVEN Networks*.

Any contrary finding would be inconsistent with, and highly expansive of, the venue statute.  As the Court recognized in *SEVEN Networks*, venue statutes must be strictly read in conformity with their language.  *Schnell v. Peter Eckrich & Sons, Inc*., 365 U.S. 260, 264 (1961) (cited in *SEVEN Networks*, 315 F. Supp. 3d. at 938 n.1) (venue "is not one of those vague principles which, in the interest of some overriding policy, is to be given a 'liberal' construction"); *In re BigCommerce, Inc.*, 890 F.3d 978, 985 (Fed. Cir. 2018) (cited in *SEVEN Networks*, 315 F. Supp. 3d. at 938 n.1) ("[w]e cannot ignore the requirements of the statute merely because different requirements may be more suitable for a more modern business environment.").

The "Open Connect" servers that Netflix has transferred to ISPs in this district cannot satisfy the statutory language requiring the challenged venue to contain a place *of the defendant*. The servers (and the spaces in which they are deployed) are ███████████████████████████ ████████████████████████████████████████████ and the ISP may freely alter both the server's IP address and the end users it serves.  Nguyen Decl. Exs. 1, 3, 5, 7, 9 and 11. For these reasons, the ***physical*** servers cannot be said to be Netflix's.  Put differently, to the extent the servers qualify as "places" it is only as a result of their ***physical*** presence: a physical presence over which ███████████████████████████████████████

Nor can PMC point to Netflix's control over the licensed software to change this result. To make such an argument PMC would have to argue that Netflix's control over the ***logical*** operation of the servers was sufficient to justify treating the ***physical*** servers as Netflix's place of

business.  But this would vitiate the reasoning of *SEVEN Networks* and contradict the Federal Circuit's decision in *In re Cray*.  In *SEVEN Networks* this Court noted that it was the distinction between (on one hand) ownership and control over the physical server and (on the other) control over a server's logical operation that mitigated against the "concern expressed in *Personal Audio* that '[m]aybe even every handheld device sold by Verizon would become a place of business for Verizon because the end-user signed an agreement with Verizon regarding Verizon's exclusive control of the device.'"  315 F. Supp. 3d at 951 n.26.  As the Court put it "[s]uch a holding could not be supported by proper application of the law; proper reading of the statute, guided by *In re Cray*."  *Id.*  The same is true here.

> **d.  The Servers Are Not "Regular and Established" Places of Business of Netflix**

Even if the Court were to conclude that the "Open Connect" servers could be treated as ***Netflix's*** for purposes of the venue determination, those servers still would not satisfy the "regular and established" requirement.  *See In re Cray*, 871 F.3d at 1362-63 (a place of business is "regular and established," if the place where that business is carried out is "settle[d] certainly, or fix[ed] permanently.") (alterations in original).  Indeed, in *SEVEN Networks*, the Court cited numerous definitions of the word "place" to ground its analysis.  315 F. Supp. 3d at 939, nn.4-5.  Each of those definitions reflect the fact that "places" are both physical and *fixed* in space.  *See id.* at n.5. (*e.g.* "A particular portion of space, considered as separate and distinct from the rest of space; a particular locality, spot, or site; position.").

The GGC server at issue in *SEVEN Networks* satisfied this requirement because "[o]nce installed, it is considered a permanent fixture" because the ISP may not move it without Google's permission.  *Id*. at 952.  The opposite is true here: the hardware transfer agreements do not require the receiving ISPs to install the servers in any specific location, do not prevent the receiving ISPs from moving the servers, nor require them to seek advance permission from Netflix, or even give notice of such a move.  Nguyen Decl. Exs. 1, 3, 5, 7, 9.  Indeed, Netflix's Deployment Guide makes it clear that because "traffic is only delivered from your embedded [Open Connect Appliance] to the customer prefixes that you explicitly announce to them . . . you as the ISP partner

have full control over the networks that the appliances will serve."  Nguyen Decl Ex. 11 (2018 Deployment Guide) at 13; *see also id*. at 14 (explaining how to change the device's IP address). Thus, the servers are not "settled certainly, or fixed permanently" in this district, much less by Netflix.  That is the exact opposite of the GGC server at issue in *SEVEN Networks*, where "the control exerted over both the server ***and its location*** under the GGC agreements" led the Court to conclude that the GGC servers satisfied the "regular and established" requirement.  315 F. Supp. 3d at 956 (emphasis added).

### e.  Equipment Should Not Constitute a "Place" Under the Venue Statute

Because Netflix neither owns nor physically controls the Open Connect servers at issue in this motion, it should not be necessary to re-evaluate the ruling in *SEVEN Networks* in order to find that venue is improper as to Netflix.  However, to the extent the Court finds that the Open Connect servers constitute Netflix's "regular and established place of business" under *SEVEN Networks*, the Court should reconsider its holding that equipment, such as servers, are "places" within the meaning of § 1400(b).

As an initial matter, the language of § 1400(b) is plain: the defendant must have a "place of business" in the district, not merely a thing.  Things and places are not the same, as the dictionaries relied on in *In re Cray* make clear.  "Place" means "'[a] building or a part of a building set apart for any purpose' or 'quarters of any kind.'"  *In re Cray*, 871 F.3d at 1362 (quoting William Dwight Whitney, The Century Dictionary 4520 (Benjamin E. Smith ed., 1911)).[10]  Conversely, a "thing" is "any object, substance, attribute, idea."  Declaration of Clement S. Roberts ("Roberts Decl.") Decl. Ex. 3 (The Century Dictionary, *supra*, at 6291).  The two concepts are different, and they should not be given the same meaning.

The difference between things and places is of particular importance in this context because Congress focused on objects in the general civil venue provision.  In that statute Congress authorized suit wherever "a substantial part of [the] ***property*** that is the subject of the action is

---

[10] The dictionaries cited by this Court in *SEVEN Networks* reflect the same distinction.  *See, e.g.*, Roberts Decl. Exs. 1-2.

situated."   28 U.S.C. § 1391(b)(2) (emphasis added); *see Department of Homeland Sec. v. MacLean*, 135 S. Ct. 913, 920-21 (2015) (Congress's use of clear language in one statute suggests it did not intend to convey the same meaning through "obscure" language in another.).   Unlike "place," the ordinary meaning of "property" does include objects.  *See, e.g.*, Roberts Decl. Ex. 4 (The Century Dictionary, at 4777 ("chattels and land")); Ex. 5 (Black's Law Dictionary 1216 (6th ed. 1990) ("lands or tenements, goods or chattels")).   And courts have interpreted § 1391 in line with this understanding of "property."  *See, e.g.*, *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 689-90 (S.D. Tex. 2010); *Power Paragon, Inc. v. Precision Tech. USA, Inc.*, 605 F. Supp. 2d 722, 727 (E.D. Va. 2008).   The contrast between these two venue statutes shows that when Congress referred to "places" in § 1400(b) it meant something other than "property."

The ruling in *SEVEN Networks* is also in substantial tension with *In re Cray's* holding that "place" means "a building," "quarters," or other "geographical location" – none of which describe a piece of equipment itself, even if they may refer to the space in which that equipment is housed. *In re Cray*, 871 F.3d at 1362.   The holding in *SEVEN Networks* is likewise in tension with *In re Cordis Corp.*, 769 F.2d 733 (Fed. Cir. 1985).   *In re Cordis* found that a sales representative's home office established a corporation's "place of business" because, among other things, the representatives "continually maintain a stock of its products within the district." *Id.* at 737.   The presence of continuous inventory helped to show that the home office was a "place of business" of the defendant.   But the Federal Circuit never even considered the idea that the space occupied by the inventory itself might constitute a "place of business."   That is, however, an essential tenet of the Court's holding in *SEVEN Networks* – *i.e.* that a GGC server may be said to be a "place" because it is "a physical server occupying a physical space."   *SEVEN Networks*, 315 F. Supp. 3d at 951.   The exact same thing was true of the inventory in *Cordis* – it was a collection of physical objects that occupied a physical space, and the space it took up was used *by the business* for a business purpose (*i.e.* the storage of that inventory).   If this were sufficient to create venue, the question of whether the *home office* in which that inventory was stored established a place of business would have been irrelevant – because the inventory alone would have been sufficient.

Thus, to the extent the Court is not persuaded that venue is improper under the approach adopted in *SEVEN Networks*, Netflix respectfully requests that the Court reconsider its holding that equipment constitutes a "place" under § 1400(b).

### f. If Not Dismissed, This Action Should Be Transferred to Northern California

Where venue is improper, as it is here, the district court "shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. § 1406(a). Should the Court determine that it is in the interest of justice to transfer this case for lack of venue rather than dismissing it, Netflix requests that the Court transfer it to the Northern District of California because – as shown in the next section – the "'witnesses, evidence, the underlying events, and [the defendant] are based there.'" *See Moran v. Smith*, No. 5:15-cv-1121-DAE, 2016 WL 4033268, at \*2 (W.D. Tex. July 27, 2016) (*quoting Herman v. Cataphora*, Inc., 730 F.3d 460, 466 (5th Cir. 2013)).

### B. The Court Should Transfer for Inconvenient Venue

To the extent the Court concludes that venue is proper in this district, it should nevertheless transfer this case to the Northern District of California under § 1404(a).

### a. This Case Could Have Been Brought in Northern California

Plaintiff's complaint acknowledges that Netflix has its principal place of business in the Northern District of California.  Dkt. No. 1 ¶ 2.  This is sufficient to establish personal jurisdiction and venue over Netflix and thus the case could have been brought in the Northern District of California in the first instance.  *Adaptix*, 937 F. Supp. 2d at 872.

### b. The Private Interest Factors Favor Transfer

### i. Northern California Offers Better Access to Proof

"Despite technological advances that certainly lighten the relative inconvenience of transporting large amounts of documents across the country, this factor is still a part of the transfer analysis." *Centre One v. Vonage Holdings Corp.*, No. 6:08-CV-467, 2010 WL 3257642, at \*2 (E.D. Tex. Aug. 17, 2010).  As this Court has held, "the place where the defendant's documents are kept weighs in favor of transfer to that location." *Realtime Data LLC v. Teradata Operations,*

*Inc.*, No. 6:15-CV-470-RWS-JDL, 2016 WL 235183, at *2 (E.D. Tex. Jan. 20, 2016).

The bulk of Netflix's documents relevant to this case will be found either in Netflix's San Francisco-area office, or in cloud storage.  Nguyen Decl. ¶ 18.  While the cloud-based documents are technically accessible from both districts, Netflix maintains potentially discoverable information in its Northern California headquarters.  *Id.*  Moreover, insofar as documents, communications, source code, or other information is necessary in this case, Netflix will need the assistance of engineers and personnel from its Northern California office to identify the relevant information and code and to provide the technical assistance necessary to make the code available in a secure manner.  *Id.*; *see also PersonalWeb Techs., LLC v. NEC Corp. of Am., Inc.*, No. 6:11–CV–655, 2013 WL 9600333, at *18 (E.D. Tex. Mar. 21, 2013) ("access to sources of proof" factor favors transfer based in part on the location in which accused infringer's source code is managed).  Thus, this factor favors transfer.

### ii.  Northern California Is More Convenient for Potential Witnesses

The convenience and cost of attendance for witnesses is an "important factor" in the transfer calculus.  *Nintendo*, 589 F.3d at 1198.  "When the distance between an existing venue for trial of a matter and a proposed venue under § 1404(a) is more than 100 miles, the factor of inconvenience to witnesses increases in direct relationship to the additional distance to be traveled."  *Volkswagen*, 545 F.3d at 317.

All of Netflix's relevant witnesses would find trial in the Northern District of California more convenient.  In particular, Netflix identifies the following people (and topics of knowledge) as potential witnesses who work in Northern California: ▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

Given the number of the specifically identified witnesses from the Northern District of California, this factor heavily favors transfer.

### iii.   Northern California Has More Relevant Absolute Subpoena Power

The interests of justice favor transfer where the transferee district has absolute subpoena power over relevant witnesses.  This is important to the transfer analysis, particularly where third-party witnesses are "specifically identified."  *U.S. Ethernet Innovations, LLC v. Samsung Elecs. Co.*, No. 6:12-CV-398-MHS-JDL, 2013 WL 1363613, at *3 (E.D. Tex. Apr. 2, 2013).

In this case, PMC's complaint also makes references to the fact that StarSight and Gemstar (now subsidiaries of TiVo) allegedly recognized the technological significance of the asserted inventions and became PMC's licensees as a result.  Dkt. No. 1 at ¶ 28.  Both StarSight and TiVo are (and at all relevant times have been) headquartered in the Northern District of California.[11] Because PMC is expressly relying on their alleged recognition, they are relevant witnesses, and the Northern District of California has much greater subpoena power than this district.  *See In re Genentech, Inc.,* 566 F.3d at 1345 ("The fact that the transferee venue is a venue with usable subpoena power here weighs in favor of transfer, and not only slightly.").

### iv.   Judicial Economy Is Neutral

Where a plaintiff chooses to file multiple lawsuits in a district, and the defendant moves to transfer early in the litigation, courts find the judicial economy factor neutral and grant transfer to the more convenient forum. *See Klausner Techs., Inc. v. Interactive Intelligence Grp., Inc*., No. 6:11-cv-578-LED, 2012 WL 13012618, at *4 (E.D. Tex. Sept. 26, 2012) (involving over fifty cases); *Innovative Global Sys. LLC v. OnStar, LLC*, No. 6:10-CV-574-LED-JDL, 2012 WL 12930885 at *6 (E.D. Tex. Feb. 14, 2012) (a "co-pending suit in its infancy . . . does not increase the Court's familiarity with the patents-in-suit and therefore does not implicate judicial economy"); *cf. In re Verizon Bus. Network Servs., Inc*., 635 F.3d 559, 562 (Fed. Cir. 2011) ("To interpret § 1404(a) to hold that any prior suit involving the same patent can override a compelling showing of transfer would be inconsistent with the policies underlying § 1404(a).").

---

[11] Roberts Decl. ¶¶ 8-11 (noting that StarSight's headquarters is located at 39650 Liberty St, Fremont CA 94538 and Tivo's headquarters is at 2160 Gold St, San Jose, CA 95002).

Although PMC has brought suit in this district ten times (excluding the three recently filed in March 2019), only two of the patents-in-suit were asserted in any of those cases, and the Court has only issued two claim construction orders construing some of the terms of only one of those patents (*i.e.* the '217 Patent was partially construed in Case Nos. 2-15-cv-01754 and 2-17-cv-00433).   Thus, prior lawsuits in this Court would not significantly affect judicial economy and should not weigh against transfer.   Similarly, the presence of suits against Google and Akamai should not weigh in favor of maintaining the suit here.   To the contrary, given the uncertainty of settlement timing, there is no reason to think that maintaining this suit in this district is likely to result in a smaller number of claim constructions or otherwise increase judicial efficiency.   *See GeoTag, Inc. v. Starbucks Corp.*, No. 2:10-cv-572, 2013 WL 890484, at *6 (E.D. Tex. Jan. 14, 2013) (allowing separately filed patent infringement cases to sway a venue transfer analysis would allow plaintiffs to "manipulate venue by serially filling [sic] cases within a single district" and "would undermine the principals [sic] underpinning transfer law and the . . . America Invents Act").

### c.   The Public Interest Factors Favor Transfer

#### i.   The Northern District of California Has a Greater Interest in This Case

This Court has held that the district in which a defendant is headquartered, developed the accused products, and employs a substantial number of people, has a significant local interest in the case, enough to weigh in favor of transfer.   *Personalweb Techs., LLC v. Yahoo! Inc.*, No. 6:12–CV–658, 2014 WL 1689046, at *8 (E.D. Tex. Feb. 12, 2014).    Similarly, where the allegations call into question the work and reputation of a defendant's employees, this factor weighs in favor of transfer.   *In re Hoffman-La Roche Inc.*, 587 F.3d 1333, 1336 (Fed. Cir. 2009).

Under these principles, this factor favors transfer.   Netflix is headquartered in the Northern District of California where it employs more than 2,500 people.   Nguyen Decl. ¶ 2.   That is where the bulk of Netflix's domestic engineering resources are located, and the accused products were largely developed.   *Id.*   Thus, this factor favors transfer.

### ii.   The Remaining Public Interest Factors Are Neutral

The second public interest factor of administrative issues related to court congestion is neutral. Although the speed with which a case can be resolved is a factor in the transfer analysis, the speculative nature of this factor generally does not weigh in favor of or against transfer. *Optimum Power Solutions LLC v. Apple, Inc.*, 794 F. Supp. 2d 696, 702 (E.D. Tex. 2011).

The third and fourth public interest factors—the familiarity of the forum with the law that will govern the case and the avoidance of unnecessary problems of conflict of laws—are neutral because this matter arises entirely under patent law.  Both this district and the Northern District of California are familiar with patent law, and because patent law is the same in every district in the country, there is no conflict in the law that the two jurisdictions would apply.

## V.   Conclusion

Netflix does not own or physically control the only servers that provide the alleged basis for venue in this district.  Venue is therefore improper, and this case should be dismissed or transferred.  But even if the Court would otherwise find that venue is proper, the case should be transferred to the Northern District of California because that district is clearly more convenient given the location of evidence, witnesses, and relevant subpoena power.

Respectfully submitted,

*/s/ Jennifer H. Doan*
Jennifer H. Doan
Texas Bar No. 08809050
Kyle R. Akin
Texas Bar No. 24105422
HALTOM & DOAN
6500 Summerhill Road, Suite 100
Texarkana, TX 75503
Telephone: (903) 255-1000
Facsimile: (903) 255-0800
Email: jdoan@haltomdoan.com
Email: kakin@haltomdoan.com

OF COUNSEL:

Clement Roberts
ORRICK HERRINGTON &
SUTCLIFFE LLP
The Orrick Building
405 Howard Street
San Francisco, CA 94105-2669
Phone: 415-773-5700
Email: croberts@orrick.com

Alyssa Caridis
ORRICK HERRINGTON &
SUTCLIFFE LLP
777 South Figueroa Street, Suite 3200
Los Angeles, CA 90017-5855
Phone: 213-629-2020
Email: acaridis@orrick.com

**ATTORNEYS FOR DEFENDANT
NETFLIX, INC.**

## <u>CERTIFICATE OF SERVICE</u>

The undersigned certifies that the foregoing document was filed electronically in compliance with Local Rule CV-5(a).  All other counsel of record not deemed to have consented to electronic service were served with a true and correct copy of the foregoing by electronic mail on this 30th day of May, 2019.

*/s/ Jennifer H. Doan*
Jennifer H. Doan